RUDOLPH SCHNEITTER, *et al.*, Appellants, v. EMMA I CARMAN, *et al.*

**Mental Capacity:** UNDUE INFLUENCE: *Evidence.* In an action to to set aside a deed· on the ground of mental incapacity of the grantor, it appeared that the grantor, a German, able to read and write his own language, had always been superstitious, believing in witches; that he was not in very good health, but that he was able to manage his farm; that, as a rule, he allowed his wife to bargain for him, but was able to do all necessary figuring, and to keep the time of his employes. It appeared that, when the deed was made, he had instructed the attorney who drew it, as to his wishes, stating that he made the deed in order to secure the support of his wife. It was shown that, in various matters occurring about the time the ·deed was made, he had shown himself capable of transacting business. *Held:*

    a. The evidence justified a finding that grantor had mental capacity to execute the deed..

    b. There being no evidence that the delusions concerning witchcraft operated to induce the conveyance, these facts fail to show that there was any undue influence.

SAME. A deed will not be set aside on the ground of mental incapacity of the grantor, on the opinion of some witnesses, based upon facts recited by them, that he was not competent to contract at the time he executed the deed, where many more witnesses, having much better means of knowledge, testify to the contrary, and various acts of the testator, as to which evidence is given, tend strongly to establish his mental capacity.

**Consideration for a Deed.** A grantor conveyed to his stepdaughter certain real estate, and, by a collateral instrument, the grantee agreed to support and maintain grantor and his wife, for life. *Held,* that the relationship between grantor and grantee, and the agreement for maintenance, imported consideration sufficient to support the conveyance.

*Appeal from Fremont District Court.*—HON. W. S. LEWIS, Judge.

SATURDAY, MAY 16, 1896.

PRIOR to June 18, 1888, Rudolph Schneitter was the owner of the west one-half of the northeast one-fourth of section 33, in range 68, township 42, in Fremont county, Iowa. Sarah Schneitter was his wife. June 18, 1888, said Schneitter and wife executed a warranty deed for said land to Emma I. Carman, one of the defendants herein. On the same day, said defendant, Carman, executed and delivered to the grantors in said deed an instrument in writing, wherein it is stated that a part of the consideration of said deed was that she should "care for and maintain" said grantors during their natural life, and also reciting that said conveyance was conditional that the grantors should have the right to occupy said real estate so long as they, or either of them, should choose so to do, and to have the rent and use of said premises without charge so long as they shall choose to occupy the same. Said instrument also recites that, in consideration of said conveyance, she agrees to give the grantors, and each of them, suitable and comfortable care and maintenance so long as they, or either of them, shall live. The defendant, Emma I. Carman, is a daughter of Sarah Schneitter by a former husband. Sarah E. Mosier is the child of both Rudolph and Sarah Schneitter. April 10, 1894, said Rudolph Schneitter and his wife commenced this suit against said Emma I. Carman and others to cancel and set aside said deed, and to quiet title in said land in Rudolph Schneitter. The grounds alleged for setting aside said conveyance were want of mental capacity in Rudolph Schneitter to make a deed; that he executed it under a delusion, and

under duress; that he was induced to do so by reason of undue influence of the grantee and others; and that no adequate consideration passed for the land. Defendants answered the petition, denying all the material allegations therein contained, except the relationship of Sarah E. Mosier, and averred that the deed sought to be set aside had been recorded for more than five years before this suit was commenced. Plaintiffs replied that they had been citizens of Iowa for thirty years prior to the beginning of this suit, and the defendants had been non-residents of the state of Iowa for fifteen years prior to the commencement of this suit, and other facts which need not now be set forth. Before the trial, in the district court, Rudolph Schneitter died, and his daughter, Sarah E. Mosier, was substituted in his stead. The cause was tried to the court, and a decree entered dismissing plaintiffs' bill at their costs, from which plaintiff's appeal.—*Affirmed.*

*W. E. Mitchell* for appellants.

*William Eaton* for appellees.

KINNE, J.—I. We do not think it is shown that Rudolph Schneitter was mentally incapable of making the conveyance which plaintiffs seek to set aside. The evidence shows that he was a German, and able to read and write in his own language; that he came to Fremont county just prior to the beginning of the war of the Rebellion; that, some fifteen years before he died, his son John, deceased, and three years thereafter, his daughter Mary died. For many years, and even prior to the death of his son, he had not been able to work much. While John lived, he attended to the details of the business on the farm, and, after his death, the father and his wife managed the business. For more than

thirty years he had been a believer in witches and ghosts. Some one witched his mare and she would not work. Somebody witched his sauerkraut, and it spoiled. The meat barrel was witched, and the hoops came off. He was always a superstitious man. He believed in killing hogs when the moon was full or was rising. He had been for many years reticent. It was difficult for those well acquainted with him to engage him in conversation, and often he contented himself with saying "Yes" or "No" to questions asked him. He was never a robust man. He had fever sores on his leg or foot, which made walking somewhat difficult. After his son and daughter died, and he grew older, he became less talkative, rather morose, and permitted his wife to do much of the talking and bargaining for him, assenting to what she did. His wife could not figure, and, when a sale of property was made, the old man did the figuring. He was in most respects an ignorant man. The deed was drawn by Attorney Draper, who says that Schneitter made his wants known to him; that he understood the nature of the business done; that he said the reason he wanted the conveyance made, was so that his wife would be secure. He says Schneitter was an old man, not talkative, except as he talked to him; that he did not impress the witness as being "particularly a feeble man." Only about two months before he executed this deed, he began a lawsuit against his son-in-law, Mosier, to recover possession of a dwelling house. In the spring of 1888, witness Burdick and his wife visited the Schneitters at their home, and dined with them. They had an organ in the house, and Schneitter wanted his visitors to send them a purchaser for it, as he had no use for it. He met him several times that spring, and says he was competent to do business, or, as he expresses it, "I seen no difference in respect to competency between Mr. Schneitter and

other men." Mrs. Burdick corroborates her husband's testimony. The justice of the peace before whom the suit was tried, testified to Schneitter's soundness of mind. In 1887 and 1888 he had dealings with several parties, rented land, helped select seed corn, settled for damages done by cattle to a neighbor's crops, kept accounts of the time of people who worked for him, directed how work should be done, and in many other ways evidenced that he was mentally capable of contracting. Several witnesses gave their opinion, based upon facts recited by them, that he was not competent to contract at the time he executed the deed, but many more, having much better means of knowing, testified to the contrary. His acts, some of which we have referred to, are, in our judgment, ample evidence of his mental capacity.

II. That Schneitter was a man possessed of delusions there is no doubt, but, in our judgment, there is no evidence warranting us in holding that he was moved by them to execute the conveyance. He talked with witness, Cooper, about deeding the land to some one. He told Draper he wanted to deed it, so the old lady would be secure. He spoke to Gardner about deeding the land to Carman, and binding him to take care of them. He advised them not to do it, but the old man afterwards told the witness they would deed the place to Emma Carman. This was but a short time before the deed was made. The testimony, we think, shows quite satisfactorily that these old people had had trouble with the son-in-law, Mosier, and had told various parties of their intention to convey the property to the defendant. We think they did just what they intended in making the conveyance.

III. We shall not undertake to enter into a detailed discussion of the evidence relating to the matter of undue influence. It is sufficient to say that

it is evident that both Schneitter and his wife, without the intervention of any one, determined to deed this land to the defendant, Emma I. Carman. This conclusion was reached by them while the Carmans were absent. The conveyance was the free act of the Schneitters. As to the claim that there was no adequate consideration for the conveyance, it may be said, none was needed. However, the deed imported a consideration. The relation of the grantee to the grantors, and her obligation entered into to support and maintain them, were sufficient considerations, if any were needed. Again, it does not appear from this record what the land conveyed was, in fact, worth.

We have carefully considered this record, and reached the conclusion that there is no reason for disturbing the decree of the district court. We are strengthened in our conclusion by the fact that almost six years had elapsed after the making of this deed, before this action was commenced, to set it aside.— AFFIRMED.